IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MATTHEW A. GOODWIN,**  3:12-CV-00205-RE

               Plaintiff,  **OPINION AND ORDER**

      v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

               Defendant.

**REDDEN**, Judge:

Plaintiff Matthew A. Goodwin ("Goodwin") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded to the Commissioner for further proceedings.

1 - OPINION AND ORDER

## BACKGROUND

Goodwin was twenty eight years old in 2009 when he filed the application for disability insurance benefits, alleging disability since February 15, 2005, due to chronic pain, depression, and herniated disc. Tr. 136. His application was denied initially and upon reconsideration. After a January 2011 hearing an Administrative Law Judge ("ALJ") found him not disabled in an opinion issued in February 2011. Goodwin's request for review was denied, making the ALJ's decision the final decision of the Commissioner. Goodwin's disability insured status expired for purposes of Title II disability benefits on March 31, 2008.

## ALJ'S DECISION

The ALJ found Goodwin had the medically determinable severe impairments of degenerative disc disease of the thoracic and lumbar spine and chronic pain. Tr. 16. The ALJ determined Goodwin retained the residual functional capacity ("RFC") to perform a less than full range of light work, he could stand and walk no more than two hours in an eight hour day, and he could occasionally stoop, crouch, crawl, and kneel. Tr. 20.

The ALJ found that Goodwin was able to return to his past relevant work as a receptionist. Tr. 27. The Commissioner concedes that this step four analysis was in error, and seeks remand to correct the error.

The medical records accurately set out Goodwin's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

2 - OPINION AND ORDER

## DISCUSSION

Goodwin contends that the ALJ erred by: (1) failing to find his impairments meet or equal in intensity a listed impairment at step three; (2) failing to formulate an accurate RFC at step four; and (3) failing to provide a full, fair, and impartial hearing. The Commissioner concedes that the ALJ erred, and argues that this matter should be remanded for further proceedings.

### I. Step Three and The Listings

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" ("The Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment.

3 - OPINION AND ORDER

*See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

Plaintiff argues that the ALJ erred by failing to find that his impairments, considered in combination, meet or equal a Listed impairment, citing § 12.07.

The ALJ considered listing numbers 1.00 (Musculoskeletal System), 11.00 (Neurological) and 12.00 (Mental Disorders). Tr. 19. As to listing 12.07 (Somatoform Disorders) the Listing provides:

> 12.07 Somatoform disorders: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.
>
> The required level of severity is met when the requirements in both A and B are satisfied:
>
> > A. Medically documented by evidence of one of the following:
> >
> > 1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or
> >
> > 2. Persistent nonorganic disturbance of one of the following:
> >
> > a. Vision, or
> >
> > b. Speech; or
> >
> > c. Hearing; or
> >
> > d. Use of a limb; or
> >
> > e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or
> >
> > f. Sensation (e.g., diminished or heightened).
> >
> > 3. Unrealistic interpretation of physical signs or sensations associated with preoccupation or belief that one has a serious disease or injury;

4 - OPINION AND ORDER

AND

> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

The regulations provide the following definitions:

> Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Part 404, Subpt. P, App. 12.00©.

### A. Activities of Daily Living

The regulations provide:

> 1. *Activities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. In the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction.
>
> We do not define "marked" by a specific number of activities of daily living in which functioning is impaired, but by the

> nature and overall degree of interference with function. For example, if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your daily activities if you have serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions.

*Id.*

The ALJ cited the paragraph B criteria, and found that Goodwin had moderate restriction in activities of daily living. The ALJ noted:

> In 2010, he testified he tried to be a stay at home father but they had to put his daughter in day care because he could not take care of her due to pain. Records from 2007 reveal he reported he was a 'stay at home dad' for his infant daughter [citation omitted]. Records from April 2008 show he 'was weaning his daughter...and he has been taking more care of his daughter, and he has been having more pain as a result [citation omitted]. In April 2008 he reported he was going to the beach for the weekend [citation omitted]. He testified he travelled [sic] to Colorado a few times. Although he reported it was difficult, he continued to drive and shop and he could handle finances.

Tr. 20.

Goodwin argues that the ALJ erred by not considering the effect of his diagnosed depression. Goodwin points to the January 2011 opinion of examining physician David Koon, M.D. Tr. 749-57. Dr. Koon filled out a Medical Source Statement in which he checked a box indicating that Goodwin was markedly restricted in activities of daily living and markedly restricted due to three episodes of decompensation within a 12 month period, each of which is expected to be of two weeks duration. Dr. Koon did not offer an opinion as to how long these conditions existed.

6 - OPINION AND ORDER

On this record, the ALJ did not err in finding that Goodwin had moderate restriction in activities of daily living as of his date last insured, March 31, 2008.

## B. Concentration, Persistence and Pace

The ALJ found that Goodwin had moderate difficulties with concentration, persistence, and pace. The ALJ noted Goodwin's testimony that he could not concentrate due to pain and the side effects of medication, but cited evidence from May 2007 where Goodwin reported he had had to stop exercising because of abdominal pain, and could no longer bike or do yoga. Tr. 20.

Goodwin argues that the ALJ erred by rejecting the opinion of treating psychologist Greg Bishop, Ph.D. Dr. Bishop began treating Goodwin in November 2010, and in January 2011 purportedly completed an unsigned and undated Mental Residual Functional Capacity Assessment ("MRFCA") form in which he checked the box indicating that Goodwin would be unable to complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 760. The ALJ noted that Dr. Bishop's treatment began well after Goodwin's date last insured. Tr. 25.

The ALJ did not err in finding Goodwin moderately limited in concentration, persistence and pace. Dr. Bishop did not offer an opinion as to how long Goodwin had been unable to complete a normal workday. Moreover, the MRFCA form lists twenty functional factors in section I. Section II provides room for remarks, and Section III contains the actual Functional Capacity Assessment. The Social Security Program Operations Manual Systems ("POMS") specifies that the section I of the MRFCA "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment.**" Emphasis in original. Section III of the form contains the actual mental

7 - OPINION AND ORDER

residual functional capacity assessment.

In Section I, Dr. Bishop determined that Goodwin was "Moderately Limited" in the ability to maintain attention and concentration for extended periods," and "Markedly Limited" in the ability to complete a normal workday. Tr. 760. Dr. Bishop did not fill out Section II or, most importantly, Section III.

## II. Step Four

The ALJ found that Goodwin's RFC allowed him to perform his past relevant work at step four in the sequential proceedings. Tr. 26. Goodwin asserts that this finding is based upon an erroneous RFC assessment.

At step four in the sequential proceedings, the ALJ determines if the claimant can perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform such work he is not disabled and the sequential evaluation concludes. *Id.* In construing his step four findings, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ may then compare the demands of a claimant's past relevant work with the claimant's RFC in determining whether the claimant may presently perform such work. SSR 82-62, "Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work" (*available at* 1982 WL 31386, at *3).

The Commissioner concedes the ALJ erred at step four by inaccurately finding Goodwin able to return to past relevant work as a receptionist.

///

8 - OPINION AND ORDER

## III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

There are outstanding issues that must be resolved before a determination of disability can be made. On remand, the ALJ must consider evidence submitted to the Appeals Council

9 - OPINION AND ORDER

after the February 2011 ALJ decision was issued, and reconsider Goodwin's RFC, and the steps four and five analyses.

Accordingly, this matter is remanded for further proceedings in accordance with this Opinion and Order.

IT IS SO ORDERED.

Dated this 16 day of August, 2013.

JAMES A. REDDEN
United States District Judge